| ✎PROB 22<br>(Rev. 2/88) | BY: _____**VL**_____<br>DEPUTY | DOCKET NUMBER *(Tran. Court)*<br><br>8:20-CR-00018-JVS-1 |
|---|---|---|

### TRANSFER OF JURISDICTION

DOCKET NUMBER *(Rec. Court)*

## 5:23-CR-00452

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE | DISTRICT<br>Central of California | DIVISION<br>Southern |
|---|---|---|
| Mr. James Nate Bell | NAME OF SENTENCING JUDGE<br>James V. Selna | |
| | DATES OF PROBATION/<br>SUPERVISED RELEASE | FROM<br>August 14, 2023    TO<br>August 13, 2026 |

**Offense**

18 U.S.C. §§ 1518(a): Obstruction of Criminal Investigation of Health Care Offense

**PART 1 - ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE _____**CENTRAL**_____ DISTRICT OF _____**CALIFORNIA**_____

    IT IS HEREBY ORDERED that, pursuant to 18 U.S.C. 3605, the jurisdiction of the probationer or supervised releasee named above be transferred with the records of this Court to the United States District Court for the __WD/TX-San Antonio__ upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.*

| August 24, 2023 | *[signature]* |
|---|---|
| Date | United States District Judge |

*This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE _____**WESTERN**_____ DISTRICT OF _____**TEXAS**_____

    IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

| 09/07/2023 | *[signature]* |
|---|---|
| Effective Date | United States District Judge |

W/SO,COMPLEX,PASPRT

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CRIMINAL DOCKET FOR CASE #: 8:20-cr-00018-JVS-1

Case title: USA v. Bell et al                                    Date Filed: 01/29/2020

Assigned to: Judge James V. Selna

**Defendant (1)**

**James Nate Bell**                         represented by    **Diane C. Bass**
                                                             Law Office of Diane C. Bass
                                                             5440 Trabuco Road
                                                             Irvine, CA 92618
                                                             949-494-7011
                                                             Fax: 949-727-1284
                                                             Email: diane@dbasslaw.com
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: Retained*

                                                             **Jason Hannan**
                                                             Federal Public Defenders Office
                                                             Santa Ana Division
                                                             411 West 4th Street Suite 7110
                                                             Santa Ana, CA 92701
                                                             714-338-4500
                                                             Fax: 714-338-4520
                                                             Email: Jason_Hannan@fd.org
                                                             *TERMINATED: 02/14/2020*
                                                             *Designation: Public Defender or*
                                                             *Community Defender Appointment*

**Pending Counts**                                           **Disposition**

18:1518(a) OBSTRUCTION OF
CRIMINAL INVESTIGATION OF
HEALTH CARE OFFENSE
(54s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                        **Disposition**

18:1347(a)(2),2 HEALTH CARE FRAUD
(1-21)

18:1347(a)(2), 2 HEALTH CARE FRAUD
(1s-21s)

18:1341, 2(b) MAIL FRAUD
(22-27)

18:1341, 2(b) MAIL FRAUD
(22s-27s)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAM
(28)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAMS
(28s)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAM
(31)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAMS
(31s)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAM
(34-35)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAMS
(34s-35s)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAM
(37)

42:1320a-7b(b)(2)(A); 18:2(b) ILLEGAL
REMUNERATIONS IN CONNECTION
WITH FEDERAL HEALTH CARE
PROGRAMS
(38s)

18:1957, 2 ENGAGING IN MONETARY
TRANSACTIONS IN CRIMINALLY
DERIVED PROPERTY OVER $10,000
(45-48)

18:1957, 2 ENGAGING IN MONETARY
TRANSACTIONS IN CRIMINALLY
DERIVED PROPERTY OVER $10,000
(50s-53s)

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Plaintiff**

| **USA** | represented by | **David H. Chao** |
| --- | --- | --- |
| | | AUSA - Office of US Attorney |
| | | Major Frauds Section |
| | | 312 North Spring Street 11th Floor |
| | | Los Angeles, CA 90012 |
| | | 213-894-4586 |
| | | Fax: 213-894-6269 |
| | | Email: david.chao@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant US Attorney* |

**Jonathan Galatzan**
AUSA - Office of US Attorney
Asset Forfeiture Section
312 North Spring Street 14th Floor
Los Angeles, CA 90012
213-894-2727
Fax: 213-894-0142
Email: jonathan.galatzan@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Mark Aveis**
AUSA - Office of US Attorney
Major Frauds Section
312 North Spring Street Suite 1100
Los Angeles, CA 90012-4700
213-894-4477
Fax: 213-894-6269
Email: mark.aveis@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Paul G. Stern**
AUSA - Office of US Attorney
Major Frauds Section
312 North Spring Street 11th Floor

Los Angeles, CA 90012-4700
213-894-0715
Fax: 213-894-6269
Email: paul.stern@usdoj.gov
*TERMINATED: 12/27/2021*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2020 | 1 | INDICTMENT filed as to James Nate Bell (1) count(s) 1-21, 22-27, 28, 31, 34-35, 37, 45-48, Regina Piehl (2) count(s) 1-21, 22-27, 29-30, 32-33, 36, 38, 44, Michael Edwards (3) count(s) 1-21, 22-27, 39-40, Sara Samhat (4) count(s) 1-10, 22-25, 41-43. Offense occurred in OC, LA. (ja) (Entered: 02/03/2020) |
| 01/29/2020 | 6 | EX PARTE APPLICATION to Seal Indictment and Related Documents Filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat. (ja) (Entered: 02/03/2020) |
| 01/29/2020 | 7 | ORDER by Magistrate Judge Patrick J. Walsh granting 6 EX PARTE APPLICATION to Seal Indictment and Related Documents as to James Nate Bell (1), Regina Piehl (2), Michael Edwards (3), Sara Samhat (4) (ja) (Entered: 02/03/2020) |
| 01/29/2020 | 8 | CASE SUMMARY filed by AUSA Paul G Stern as to Defendant James Nate Bell; defendants Year of Birth: 1981 (ja) (Entered: 02/03/2020) |
| 01/29/2020 | 12 | NOTICE TO COURT OF COMPLEX CASE filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat. (ja) (Entered: 02/03/2020) |
| 01/29/2020 | 13 | MEMORANDUM filed by Plaintiff USA (See attachment) (ja) (Entered: 02/03/2020) |
| 01/29/2020 | 14 | MEMORANDUM filed by Plaintiff USA (See attachment) (ja) (Entered: 02/03/2020) |
| 02/04/2020 | 16 | REPORT COMMENCING CRIMINAL ACTION as to Defendant James Nate Bell; defendants Year of Birth: 1981; date of arrest: 2/4/2020 (ja) (Entered: 02/07/2020) |
| 02/04/2020 | 17 | MINUTES OF POST-INDICTMENT ARRAIGNMENT: held before Magistrate Judge John D. Early as to Defendant James Nate Bell (1) Count 1-21,22-27,28,31,34-35,37,45-48. Defendant arraigned, states true name: James Nathan Bell. Defendant entered not guilty plea to all counts as charged. Attorney: Jason Hannan for James Nate Bell, Deputy Federal Public Defender, present. Case assigned to Judge James V Selna. Court orders bail set for James Nate Bell (1) $500,000 Appearance Bond, SEE ATTACHED BOND FOR TERMS AND CONDITIONS. Jury Trial set for 3/31/2020 08:30 AM before Judge James V. Selna. Status Conference set for 3/23/2020 09:00 AM before Judge James V. Selna. Appointment of counsel is made for today's proceeding only, and until Defendant reains counsel and it is subejt to contribution by Defendant. Release No. 38665. Court Smart: CS 2/4/2020. (ja) (Entered: 02/07/2020) |
| 02/04/2020 | 18 | FINANCIAL AFFIDAVIT filed as to Defendant James Nate Bell. (Not for Public View pursuant to the E-Government Act of 2002) (ja) (Entered: 02/07/2020) |
| 02/04/2020 | 19 | STATEMENT OF CONSTITUTIONAL RIGHTS filed by Defendant James Nate Bell (ja) (Entered: 02/07/2020) |
| 02/04/2020 | 20 | PASSPORT RECEIPT from U. S. Pretrial Services as to Defendant James Nate Bell. USA passport was received on 2/4/2020. (ja) (Entered: 02/07/2020) |

| | | |
|---|---|---|
| 02/04/2020 | 21 | DECLARATION RE: PASSPORT filed by Defendant James Nate Bell, declaring that I have been issued a passport or other travel document(s), but they are not currently in my possession. I will surrender any passport or other travel document(s) issued to me, to the U.S. Pretrial Services Agency by the deadline imposed. I will not apply for a passport or other travel document during the pendency of this case. (ja) (Entered: 02/07/2020) |
| 02/04/2020 | 22 | ARREST WARRANT RETURNED Executed on 2/4/2020 as to Defendant James Nate Bell. (ja) (Entered: 02/07/2020) |
| 02/10/2020 | 33 | STIPULATION for Order [Proposed} Protective Order filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat (Attachments: # 1 Proposed Order)(Stern, Paul) (Entered: 02/10/2020) |
| 02/10/2020 | 34 | Notice of Appearance or Withdrawal of Counsel: for attorney Jonathan Galatzan counsel for Plaintiff USA. Adding Jonathan Galatzan as counsel of record for United States of America for the reason indicated in the G-123 Notice. Filed by plaintiff United States of America. (Attorney Jonathan Galatzan added to party USA(pty:pla))(Galatzan, Jonathan) (Entered: 02/10/2020) |
| 02/10/2020 | 35 | GOVERNMENT'S FIRST BILL OF PARTICULARS RE: FORFEITURE ALLEGATIONS filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat (Galatzan, Jonathan) (Entered: 02/10/2020) |
| 02/10/2020 | 37 | PROTECTIVE ORDER 33 by Judge James V. Selna (es) (Entered: 02/11/2020) |
| 02/13/2020 | 59 | NOTICE of GOVERNMENT'S FILING OF RECORDED LIS PENDENS filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat (Attachments: # 1 Exhibit A)(Galatzan, Jonathan) (Entered: 02/13/2020) |
| 02/14/2020 | 61 | REQUEST TO SUBSTITUTE ATTORNEY Diane C. Bass in place of attorney Jason Hannan Filed by Defendant James Nate Bell. (Attachments: # 1 Proposed Order) (Attorney Diane C Bass added to party James Nate Bell(pty:dft)) (Bass, Diane) (Entered: 02/14/2020) |
| 02/14/2020 | 62 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY by Judge James V. Selna. GRANTING 61 REQUEST for Approval of Substitution of Attorney Diane C. Bass, Retained Counsel as attorney of record instead of Attorney Jason Hannan, FPD as to Defendant James Nate Bell (1) (es) (Entered: 02/14/2020) |
| 02/25/2020 | 68 | REDACTED AFFIDAVIT OF SURETIES (Property) in the amount of $500,000 ; Certified copy of Deed of Trust filed by Defendant James Nate Bell. Approved by Magistrate Judge Autumn D. Spaeth. (ja) (Entered: 03/02/2020) |
| 02/25/2020 | 69 | SEALED UNREDACTED Affidavit of Surety (CR-3) filed by Defendant James Nate Bell re: Affidavit of Surety (Property)(CR-3) 68 (ja) (Entered: 03/02/2020) |
| 02/25/2020 | 70 | BOND REMARK: Certified Short Form Deed of Trust filed by James Bell and Crystal Bell located at Brea, CA 92823 as reflected on instrument number 2020000072682 naming the Clerk of Court as Beneficiary therein on the property re defendant James Nate Bell. (Attachments: # 1 Appraisal, # 2 Lot Book Report, # 3 Grant Deed, # 4 Deed of Trust, # 5 Redacted Loan Docs, # 6 Unredacted Loan Docs) (ja) (Entered: 03/02/2020) |
| 02/25/2020 | 71 | SEALED UNREDACTED Short Form Deed of Trust filed by Defendant James Nate Bell re: Bond Remark, 70 (ja) (Entered: 03/02/2020) |
| 02/25/2020 | 72 | BOND AND CONDITIONS OF RELEASE filed as to Defendant James Nate Bell conditions of release: $500,000 Appearance Bond approved by Magistrate Judge Autumn D. Spaeth. (ja) (Entered: 03/05/2020) |

| 02/26/2020 | 65 | Notice of Appearance or Withdrawal of Counsel: for attorney David H Chao counsel for Plaintiff USA. Adding David H. Chao as counsel of record for United States of America for the reason indicated in the G-123 Notice. Filed by Plaintiff David H. Chao. (Chao, David) (Entered: 02/26/2020) |
|---|---|---|
| 02/26/2020 | 66 | Joint STIPULATION for Order for Protective Order filed by Plaintiff USA as to Defendant James Nate Bell (Attachments: # 1 Proposed Order)(Chao, David) (Entered: 02/26/2020) |
| 02/27/2020 | 67 | PROTECTIVE ORDER 66 by Judge James V. Selna as to Defendant James Nate Bell (es) (Entered: 02/28/2020) |
| 03/06/2020 | 73 | STIPULATION to Continue Trial Date and findings of excludable time periods pursuant to speedy trial act from March 31, 2020 to March 16, 2021 filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat (Attachments: # 1 Proposed Order Continuing trial date and findings re excludable time periods pursuant to speedy trial act)(Stern, Paul) (Entered: 03/06/2020) |
| 03/06/2020 | 74 | *NOTE: CHANGES MADE BY THE COURT* ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT by Judge James V. Selna as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat. FOR GOOD CAUSE SHOWN: 1. The trial in this matter is continued to March 16, 2021.2. The pretrial status conference is continued to March 8, 2021, and the previously-scheduled status conference of March 23, 2020 is vacated. *SEE ORDER FOR FURTHER DETAILS.* Given the extended continuance, the Court is unlikely to grant any further continuance. (es) (Entered: 03/06/2020) |
| 04/02/2020 | 82 | STIPULATION for Order AUTHORIZING INTERLOCUTORY SALE OF REAL PROPERTY AND SUBSTITUTION OF RES filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat (Attachments: # 1 Proposed Order)(Galatzan, Jonathan) (Entered: 04/02/2020) |
| 04/02/2020 | 83 | STIPULATION for Order AUTHORIZING MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION TO LIQUIDATE COLLATERAL ACCOUNTS SEIZED BY THE GOVERNMENT filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat (Attachments: # 1 Proposed Order)(Galatzan, Jonathan) (Entered: 04/02/2020) |
| 04/03/2020 | 84 | ORDER AUTHORIZING INTERLOCUTORY SALE OF REAL PROPERTY AND SUBSTITUTION OF RES 82 by Judge James V. Selna as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat. (es) (Entered: 04/03/2020) |
| 04/03/2020 | 85 | ORDER AUTHORIZING MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION TO LIQUIDATE COLLATERAL ACCOUNTS SEIZED BY THE GOVERNMENT 83 by Judge James V. Selna. (es) (Entered: 04/03/2020) |
| 09/29/2020 | 103 | SEALED - UNOPPOSED EX PARTE APPLICATION FOR LEAVE TO FILE PORTIONS OF MOTION AND DOCUMENTS UNDER SEAL AND SET BRIEFING SCHEDULE; Declaration Of John L. Littrell (bm) (Entered: 09/29/2020) |
| 09/29/2020 | 104 | SEALED - ORDER GRANTING UNOPPOSED EX PARTE APPLICATION FOR LEAVE TO FILE PORTIONS OF MOTION AND DOCUMENTS UNDER SEAL AND SET BRIEFING SCHEDULE (bm) (Entered: 09/29/2020) |
| 11/03/2020 | 123 | PROCESS RECEIPT AND RETURN (USM-285) of Order on Stipulation 84 , Stipulation for Order, 82 , Remarks: DEPOSITED SALE PROCEEDS OF $1,703,917.93(20-DCI-000100) INTO SADF ON 10/23/2020. (es) (Entered: 11/03/2020) |

| | | |
|---|---|---|
| 12/02/2020 | 125 | FIRST SUPERSEDING INDICTMENT Filed as to James Nate Bell (1) count(s) 1s-21s, 22s-27s, 28s, 31s, 34s-35s, 38s, 50s-53s, 54s, Regina Piehl (2) count(s) 1s-21s, 22s-27s, 29s-30s, 32s-33s, 37s, 41s, 48s, 55s, Michael Edwards (3) count(s) 1s-21s, 22s-27s, 42s-43s, Sara Samhat (4) count(s) 1s-10s, 22s-25s, 44s-46s, James Bradford (5) count(s) 36, 39-40, 47, 49. (aco) (Entered: 12/04/2020) |
| 12/02/2020 | 127 | CASE SUMMARY filed by AUSA David H. Chao as to Defendant James Nate Bell; defendants Year of Birth: 1981 (aco) (Entered: 12/04/2020) |
| 12/02/2020 | 132 | MEMORANDUM filed by Plaintiff USA (See attachment) (aco) (Entered: 12/04/2020) |
| 12/02/2020 | 133 | MEMORANDUM filed by Plaintiff USA (See attachment) (aco) (Entered: 12/04/2020) |
| 12/02/2020 | 134 | NOTICE TO COURT OF COMPLEX CASE filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat, James Bradford. (aco) (Entered: 12/04/2020) |
| 01/21/2021 | 151 | Joint STIPULATION to Continue Trial from 2/2/2021 (Bradford) and 3/16/2021 (Bell, Piehl, Edwards) to 1/18/2022 *AND FINDINGS REGARDING EXCLUDABLE TIME PURSUANT TO SPEEDY TRIAL ACT* filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, James Bradford (Attachments: # 1 Proposed Order) (Chao, David) (Entered: 01/21/2021) |
| 01/22/2021 | 152 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PURSUANT TO SPEEDY TRIAL ACT by Judge James V. Selna as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, James Bradford. FOR GOOD CAUSE SHOWN: The Trial is continued to January 18, 2022 at 8:30 AM. The Status Conference hearing is continued to January 10, 2022 at 9:00 AM. (es) (Entered: 01/22/2021) |
| 01/28/2021 | 154 | WAIVER of Defendants Presence filed by Defendant James Nate Bell (Bass, Diane) (Entered: 01/28/2021) |
| 01/28/2021 | 155 | WAIVER OF ARRAIGNMENT *on First Superseding Indictment* filed by Defendant James Nate Bell. (Bass, Diane) (Entered: 01/28/2021) |
| 02/09/2021 | 159 | ORDER ON DEFENDANT JAMES NATE BELL'S WAIVER OF ARRAIGNMENT by Judge James V. Selna as to Defendant James Nate Bell. IT IS HEREBY ORDERED THAT: 1. The court accepts Defendant Bell's waiver of arraignment and; 2. The court accepts Defendant Bell's entry of Not Guilty on all counts. (es) (Entered: 02/09/2021) |
| 05/03/2021 | 164 | STIPULATION for Modification of Conditions of Release filed by Defendant James Nate Bell (Attachments: # 1 Proposed Order)(Bass, Diane) (Entered: 05/03/2021) |
| 05/05/2021 | 165 | DECLARATION of James Nate Bell filed by Defendant James Nate Bell RE: Miscellaneous Order, 159 , Stipulation to Modify Conditions of Release 164 (Bass, Diane) (Entered: 05/05/2021) |
| 05/07/2021 | 166 | DECLARATION of Crystal Bell filed by Defendant James Nate Bell RE: Miscellaneous Order, 159 , Stipulation to Modify Conditions of Release 164 (Bass, Diane) (Entered: 05/07/2021) |
| 05/10/2021 | 167 | ORDER MODIFYING BOND by Magistrate Judge John D. Early as to Defendant James Nate Bell (1). The secured appearance bond in the amount of $135,000 justified by the deeding of the Boerne residence shall be posted within fourteen (14) business days of the date of this order. Upon deeding of the Boerne residence, the Court's lien on the Brea residence will be lifted and the Short Form Deed of Trust and Assignment of Rights set forth at Dkt. 70 in favor of the Clerk, United States District Court, Central District of |

| | | |
|---|---|---|
| | | California, shall be withdrawn. (see document for further details) (see attached Modified Bond) (hr) (Entered: 05/11/2021) |
| 05/17/2021 | 168 | REDACTED AFFIDAVIT OF SURETIES (Property) in the amount of $135,000; Certified copy of Deed of Trust; filed by Defendant James Nate Bell. Approved by Magistrate Judge Autumn D. Spaeth. (es) (Entered: 05/18/2021) |
| 05/17/2021 | 169 | SEALED UNREDACTED Affidavit of Surety (CR-3) filed by Defendant James Nate Bell 168 (es) (Entered: 05/18/2021) |
| 05/17/2021 | 170 | REDACTED AFFIDAVIT OF SURETIES (Property) in the amount of $135,000; Certified copy of Deed of Trust; filed by Defendant James Nate Bell. Approved by Magistrate Judge Autumn D. Spaeth. (es) (Entered: 05/18/2021) |
| 05/17/2021 | 171 | SEALED UNREDACTED Affidavit of Surety (CR-3) filed by Defendant James Nate Bell 170 (es) (Entered: 05/18/2021) |
| 05/17/2021 | 172 | BOND REMARK: Certified Short Form Deed of Trust Short filed by James N. Bell and Crystal Bell located at Boerne, Texas 78006 as reflected on instrument number 2021 - 356335 naming the Clerk of Court as Beneficiary therein on the property re defendant James Nate Bell. (Attachments: # 1 Mortgage Statement, # 2 Lot Book Report, # 3 Warranty Deed, # 4 Appraisal) (es) (Entered: 05/18/2021) |
| 05/18/2021 | | BOND REMARK: Property Reconveyance Packet forwarded to the Department of Financial Services re defendant James Nate Bell and instrument number 2020000072682. (eva) (Entered: 05/18/2021) |
| 05/24/2021 | | BOND REMARK: Deed of Trust package sent thru FEDEX Tracking#8158-1808-5122 to Property Owner James Bell and Crystal Bell re instrument number 2020000072682 re defendant James Nate Bell. (dby) (Entered: 05/24/2021) |
| 08/25/2021 | 188 | MODIFIED BOND AND CONDITIONS OF RELEASE filed as to Defendant James Nate Bell conditions of release: $150,000 Appearance Bond approved by Magistrate Judge Karen E. Scott. (ja) (Entered: 08/27/2021) |
| 08/25/2021 | 189 | AFFIDAVIT RE APPEARANCE BOND (CASH SECURITY) filed by the attorney or authorized agent of the owner of the cash security as to Defendant James Nate Bell. (Not for Public View pursuant to the E-Government Act of 2002) (ja) (Entered: 08/27/2021) |
| 08/27/2021 | 187 | FINANCIAL ENTRY as to Defendant James Nate Bell: Received $15,000.00 into the registry of the Court from James Nate Bell on 08/25/2021. Receipt number SA017371. (pri) (Entered: 08/27/2021) |
| 11/05/2021 | 192 | STIPULATION to Continue Trial Date from 01/18/2022 to 06/28/2022 filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat, James Bradford (Attachments: # 1 Proposed Order)(Stern, Paul) (Entered: 11/05/2021) |
| 11/05/2021 | 193 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PURSUANT TO SPEEDY TRIAL ACT by Judge James V. Selna as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat, James Bradford. FOR GOOD CAUSE SHOWN: 1. The trial in this matter is continued from January 18, 2022 to June 28, 2022 at 8:30 a.m. The status conference hearing is continued to June 20, 2022 at 9:00 a.m. [see document for further details.] (es) (Entered: 11/05/2021) |
| 12/27/2021 | 194 | Notice of Appearance or Withdrawal of Counsel: for attorney Paul G. Stern counsel for Plaintiff USA. Paul G. Stern is no longer counsel of record for the aforementioned party in this case for the reason indicated in the G-123 Notice. Filed by plaintiff USA. (Stern, Paul) (Entered: 12/27/2021) |

| | | |
|---|---|---|
| 03/22/2022 | 197 | NOTICE OF APPEARANCE OR REASSIGNMENT of AUSA Mark Aveis on behalf of Plaintiff USA. Filed by Plaintiff USA. (Attorney Mark Aveis added to party USA(pty:pla))(Aveis, Mark) (Entered: 03/22/2022) |
| 05/12/2022 | 202 | STIPULATION re: excludable delay from June 28, 2022 to January 24, 2023 filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat, James Bradford (Attachments: # 1 Proposed Order)(Aveis, Mark) (Entered: 05/12/2022) |
| 05/13/2022 | 203 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PURSUANT TO SPEEDY TRIAL ACT by Judge James V. Selna as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat, James Bradford. The Trial is continued to 1/24/2023 at 08:30 AM, and the Status Conference is continued to 1/16/2023 at 09:00 AM. (es) (Entered: 05/13/2022) |
| 07/06/2022 | 206 | NOTICE of Manual Filing of Under Seal Documents filed by Plaintiff USA as to Defendant James Nate Bell, Regina Piehl, Michael Edwards, Sara Samhat, James Bradford (Chao, David) (Entered: 07/06/2022) |
| 07/07/2022 | 207 | SEALED GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT; DECLARATION OF DAVID H. CHAO (lom) (Entered: 07/07/2022) |
| 07/07/2022 | 208 | SEALED ORDER SEALING DOCUMENTS (lom) (Entered: 07/07/2022) |
| 07/07/2022 | 209 | SEALED DOCUMENT SEALED DOCUMENT (lom) (Entered: 07/07/2022) |
| 07/09/2022 | 210 | PROOF OF SERVICE of UNDER SEAL FILING, served on July 7, 2022, filed by Plaintiff USA as to Defendant James Nate Bell (Chao, David) (Entered: 07/09/2022) |
| 08/29/2022 | 211 | CONSENT to Video Conference/Telephonic Conference filed by Defendant James Nate Bell. (es) (Entered: 08/29/2022) |
| 08/29/2022 | 212 | SEALED DOCUMENT - UNDER SEAL HEARING (bm) (Entered: 08/30/2022) |
| 12/22/2022 | 221 | NOTICE of Manual Filing of UNDER SEAL DOCUMENTS filed by Plaintiff USA as to Defendant James Nate Bell (Chao, David) (Entered: 12/22/2022) |
| 12/22/2022 | 222 | SEALED - GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENTS; DECLARATION OF DAVID H. CHAO (bm) (Entered: 12/22/2022) |
| 12/22/2022 | 223 | SEALED - ORDER SEALING DOCUMENTS (bm) (Entered: 12/22/2022) |
| 12/22/2022 | 224 | SEALED - UNDER SEAL DOCUMENT: STIPULATION (bm) (Entered: 12/22/2022) |
| 12/22/2022 | 225 | SEALED DOCUMENT - UNDER SEAL DOCUMENT (bm) (Entered: 12/22/2022) |
| 05/01/2023 | 233 | [NOTICE OF CLERICAL ERROR ISSUED ON 07/18/2023 SEE DKT. 239 ] ORDER GRANTING STIPULATION TO CONTINUE SENTENCING HEARING by Judge James V. Selna as to Defendant James Nate Bell. IT IS HEREBY ORDERED that defendant, James Bradford's request to continue the sentencing hearing to August 28, 2023, at 10:00 a.m. is GRANTED. (es) Modified on 7/18/2023 (es). (Entered: 05/02/2023) |
| 07/05/2023 | 234 | Joint STIPULATION to Amend/Correct Sealed Document 209 filed by Plaintiff USA as to Defendant James Nate Bell (Attachments: # 1 Proposed Order)(Chao, David) (Entered: 07/05/2023) |
| 07/10/2023 | 237 | ORDER RE: STIPULATION TO AMEND PLEA AGREEMENT 234 by Judge James V. Selna as to Defendant James Nate Bell. Having read the parties' stipulation, and good |

|  |  | cause appearing, the Court hereby accepts the amendment to the plea agreement for defendant JAMES NATE BELL. (es) (Entered: 07/10/2023) |
|---|---|---|
| 07/18/2023 | 239 | NOTICE OF CLERICAL ERROR, as to Defendant James Nate Bell: Due to clerical error Re: Order to Continue Sentencing, 233 was docketed as to the wrong defendant. The order is as to defendant JAMES BRADFORD and not James Nate Bell as stated on the docket and docket description. The Order has been re-docketed to reflect the correct defendant JAMES BRADFORD and sentencing date of August 28, 2023 at 10:00 a.m. [See Dkt. 238 ] (es) (Entered: 07/18/2023) |
| 07/19/2023 | 240 | SENTENCING MEMORANDUM filed by Defendant James Nate Bell (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bass, Diane) (Entered: 07/19/2023) |
| 07/31/2023 | 241 | NOTICE of Manual Filing of UNDER SEAL DOCUMENT filed by Plaintiff USA as to Defendant James Nate Bell (Chao, David) (Entered: 07/31/2023) |
| 08/01/2023 | 242 | SEALED - GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT; DECLARATION OF DAVID H. CHAO (bm) (Entered: 08/01/2023) |
| 08/01/2023 | 243 | SEALED - ORDER SEALING DOCUMENT (bm) (Entered: 08/01/2023) |
| 08/01/2023 | 244 | SEALED DOCUMENT - UNDER SEAL DOCUMENT (bm) (Entered: 08/01/2023) |
| 08/14/2023 | 252 | SEALED DOCUMENT (bm) (Entered: 08/16/2023) |
| 08/15/2023 | 253 | SEALED DOCUMENT (bm) (Entered: 08/16/2023) |
| 09/01/2023 | 256 | Notice to United Stated District Court Western District of Texas at San Antonio, a Transfer of Jurisdiction as to Defendant James Nate Bell has been approved by this court. Please present the attached Probation/Supervised Release Jurisdiction Transfer-Out (Prob 22) to your court for approval. Upon approval, return the signed order with your case number to CrimIntakeCourtDocs-LA@cacd.uscourts.gov. (aco) (Entered: 09/01/2023) |

FILED
CLERK, U.S. DISTRICT COURT

12/2/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>JAMES NATE BELL,<br>REGINA PIEHL,<br>MICHAEL EDWARDS,<br>SARA SAMHAT, and<br>JAMES BRADFORD,<br><br>          Defendants. | SACR20-18(A)-JVS<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347(a)(2): Health Care Fraud; 42 U.S.C. § 1320a-7b(b): Illegal Remunerations in Connection with Federal Health Care Programs; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1957: Engaging in Monetary Transactions in Criminally Derived Property Over $10,000; 18 U.S.C. § 1503: Obstruction of Justice; 18 U.S.C. § 1518(a): Obstruction of Criminal Investigation of Health Care Offense; 18 U.S.C. §§ 981 and 982 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

///

///

///

///

///

The Grand Jury charges:

COUNTS ONE THROUGH TWENTY-ONE

[18 U.S.C. §§ 1347(a)(2), 2]

[DEFENDANTS BELL, PIEHL, EDWARDS, AND SAMHAT]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

Defendants and Related Entities

1.   Defendant JAMES NATE BELL was a resident of Anaheim, California.  Defendant BELL was the beneficial owner and manager of a pharmacy known as Professional Compounding Pharmacy LLC ("Professional Compounding"), located at 721 W. Whittier Boulevard, Suite H, La Habra, California, with a second location at 570 Central Avenue, Brea, California.  Professional Compounding specialized in the preparation of compound medications, especially compound creams, based upon prescriptions authorized by physicians, nurse practitioners, and physician's assistants, which typically yielded extremely high rates of reimbursement from government and private insurance companies.

2.   Defendant BELL was also the beneficial owner and manager of two successive and functionally equivalent purported medical marketing companies, Algia Pharmaceuticals MR&D, located at 1440 East Stearns Avenue, La Habra, California, and Algia, Inc., located at 560 Peralta Hill Drive, Anaheim Hills, California ("Algia").  Algia did not actually provide any medical marketing or advertising services for Professional Compounding or for any other pharmacy.  Rather, it served as a financial conduit that enabled Professional Compounding indirectly to pay commissions and/or kickbacks to sales agents and medical marketers who solicited prescriptions for compound creams

2

from physicians, nurse practitioners, and physician's assistants, and then routed these scripts, once obtained, to Professional Compounding for fulfillment.

3. James Bradford was a resident of Mission Viejo, California. Bradford was the President, Chief Executive Officer ("CEO") and one of the beneficial owners of a medical marketing company known as Product For Doctors, Inc. ("PFD"), which was located at 27001 La Paz Road, Suite 348, Mission Viejo, California, and did business with Algia and Professional Compounding. Among its other business activities, PFD engaged sales or marketing agents who recruited physicians, nurse practitioners, and physician's assistants to write prescriptions for compound creams for patient beneficiaries, which prescriptions were then routed back to PFD and to pharmacies such as Professional Compounding and Mesa Pharmacy, Inc. ("Mesa") to be filled at lucrative rates of reimbursement. Through his management and operation of PFD, Bradford and his partners received and paid commissions for the referral of prescriptions for compound creams, and other compounded medications, to Professional Compounding and Mesa.

4. Mesa, located at 19013 Sky Park Circle, Suite D, Irvine, California, also specialized in the preparation of compound medications, especially compound creams. NHS Pharma Inc., located at 1323 West Colton Avenue, Suite 120, Redlands, California, was the billing company for Mesa that, through a related entity NHS Pharma Sales, Inc., facilitated and enabled Mesa to pay commissions and/or kickbacks to sales agents and medical marketers who solicited prescriptions for compound creams from physicians, nurse

3

practitioners, and physician's assistants, and then routed these scripts, once obtained, to Mesa for fulfillment.

5.    Defendant REGINA PIEHL was a resident of Los Angeles, California.  Defendant PIEHL served as a sales agent/marketer for PFD and in that capacity engaged physicians, nurse practitioners, and physician's assistants to write prescriptions for compound creams that were routed by defendant PIEHL to PFD and ultimately to Professional Compounding for fulfillment.  In exchange, PFD paid defendant PIEHL commissions for referrals of prescriptions for compound creams.  Defendant PIEHL also served as the owner and operator of a medical care spa known as Coastal Therapy Group, Inc. ("CTG"), which was located at 16818 Hawthorne Boulevard, in Lawndale, California in a building owned by defendant PIEHL.

6.    In her capacity as a sales agent/marketer of prescriptions for compound creams and related compound medications for Professional Compounding, defendant PIEHL operated three different business entities through which she received and paid commissions for the referral of prescriptions to Professional Compounding, namely: (1) Worldwide Marketing Group ("WMG"), located at 350 Bellino Drive, Pacific Palisades, California; (2) Global Management Network, Inc. ("GMN"), located at 16818 Hawthorne Boulevard, Lawndale, California; and (3) Century Therapy Group, Inc., located at 350 Bellino Drive, Pacific Palisades, California.

7.    Defendant MICHAEL EDWARDS was a medical doctor and a resident of Huntington Beach, California.  With the assistance of defendant PIEHL, defendant EDWARDS set up and supervised sham clinical pain studies at two different clinics he established that treated patients only once or twice a week, usually on the weekends.

4

One of these weekend clinics was located at CTG (which was owned by defendant PIEHL) ("the CTG clinic"), and the second weekend clinic was located at 3142 East Plaza Boulevard, Unit T, National City, California ("the National City clinic"). Defendant EDWARDS's clinical studies purported to analyze the effectiveness of compound creams, and related compound medications, as an alternative to commonly-prescribed oral medications, such as opioids, for the treatment of pain. In fact, defendant EDWARDS's pain studies exclusively targeted a particular class of patients who had government or private insurance that paid lucrative reimbursement rates for compounded creams and related medications, and their purpose was simply to generate a high and recurring volume of prescriptions for compounded creams for those patients participating in the studies.

8. Defendant EDWARDS received substantial commission payments from defendant PIEHL for having referred compound drug prescriptions to Professional Compounding through defendant PIEHL and PFD. Defendant PIEHL disguised these commission payments to defendant EDWARDS as supposed charitable contributions to defendant EDWARDS's alleged non-profit research organization, the Foundation for the Permanent Elimination of Nerve Pain and Disability ("the Foundation"), located at 21039 South Figueroa Street, Suite 201, Carson, California, or as payments to one of defendant EDWARDS's business entities, namely, the Mobil Medical Records Association ("MMRA"), or Mobil Medical Records Technology ("MMRT"), both located at the same address as the Foundation.

9. Defendant SARA SAMHAT served as a marketer who assisted defendant EDWARDS in the routing of prescriptions for compounded

5

creams and related medications to defendant PIEHL, to PFD, and to Professional Compounding. Defendants EDWARDS and SAMHAT received commission payments from defendant PIEHL for the routing of these prescriptions for compounded medications to PFD and to Professional Compounding. These commission payments were directed in many instances by defendant PIEHL to MMRT, which was controlled by defendant EDWARDS and which possessed a bank account on which defendant SAMHAT was the signer.

10. "Physician 1" was a licensed California physician, who was hired and paid by defendant EDWARDS to work at the National City clinic. Defendant EDWARDS encouraged Physician 1, directly and indirectly, to prescribe compound creams or related compound medications to treat patients recruited by defendant EDWARDS and his staff to attend the clinic as part of defendant EDWARDS's purported pain study.

11. Nurse Practitioner 1 ("NP 1") was a licensed California nurse practitioner, who was hired by defendant PIEHL to work with defendant EDWARDS at the CTG clinic. Defendant PIEHL subsequently referred NP 1 to assist defendant EDWARDS in treating patients who attended defendant EDWARDS's National City clinic. NP 1 was encouraged, directly and indirectly, by defendants PIEHL, EDWARDS and SAMHAT to prescribe compound creams or related compound medications to patients who were recruited by defendant EDWARDS and his staff, or by defendant PIEHL, to seek treatment at the two clinics through which defendant EDWARDS conducted his sham pain studies.

Compounded Medications

12. In general, "compounding" was a practice by which a licensed pharmacist combined, mixed, or altered ingredients of a drug

6

or multiple drugs to create a drug tailored to the needs of an individual patient.  Compounded drugs were not approved by the U.S. Food and Drug Administration ("FDA"), that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.  The California Board of Pharmacy regulated the practice of compounding in the State of California.

13.  Compounded drugs, including topical compounded creams, may be prescribed by a physician when an FDA-approved drug or ointment did not meet the health needs of a particular patient.  For example, if a patient was allergic to a specific ingredient in an FDA-approved drug, such as a dye or a preservative, a compounded drug or topical cream could be prepared that excluded the substance that triggered the allergic reaction.  Compounded drugs were available when a patient could not consume a drug by traditional means, such as an elderly patient or a child who could not swallow an FDA-approved pill and needed the drug in a liquid or cream/ointment form that was not otherwise available.

TRICARE

14.  TRICARE was a health care benefit program, as defined by 18 U.S.C. § 24(b), and a federal health care program, as defined by 42 U.S.C. § 1302a-7b(f)(1), that provided health care benefits, items, and services to Department of Defense beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

15.  Express Scripts, Inc. ("ESI") was a prescription benefit plan manager that administered TRICARE's prescription drug benefits, acting at all relevant times as an agent of TRICARE.  Claims for reimbursement for services rendered or goods provided, including

covered compounded drug prescriptions, were submitted to ESI for payment by TRICARE.

16. TRICARE provided health care benefits for certain prescription drugs, including certain topical compounded creams and ointments, that were medically necessary and prescribed pursuant to TRICARE rules and regulations. In order to become a pharmacy entitled to submit claims for reimbursement to the TRICARE program, a pharmacy was required to execute a "PSAO Pharmacy Affiliation Authorization" under which the pharmacy agreed to comply with all applicable state and federal laws including, among other things, that no claims for reimbursement would be submitted to TRICARE for filling a prescription absent proof that the prescription followed a face-to-face examination by a physician, reflecting a bona fide doctor-patient relationship, and that the fulfilling pharmacy would collect a co-payment from the beneficiary at the time of dispensing a prescription.

17. During the calendar years of 2013-2015, inclusive, the period of time during which defendant BELL, and others known and unknown to the Grand Jury, operated Professional Compounding, Professional Compounding had the following TRICARE claims activity, substantially all of which was for filling prescriptions for compounded creams and related compound medications:

| CALENDAR YEAR | NUMBER OF CLAIMS | AMOUNT CLAIMED | AMOUNT PAID | AVG PMT/CLAIM |
|---|---|---|---|---|
| 2013 | 62 | $60,344 | $58,004 | $936 |
| 2014 | 1342 | $5,120,445 | $4,407,585 | $3,284 |
| 2015 | 2745 | $17,477,141 | $14,707,029 | $5,358 |

18. In early 2015, TRICARE announced that, as of the beginning of May 2015, it would no longer be reimbursing pharmacies for filling prescriptions for compound creams at the lucrative reimbursement

8

rates it had been previously providing.  As a result of this impending change in TRICARE's reimbursement policy for compound drugs, Professional Compounding accelerated its solicitation of compound drug prescriptions in March and April 2015 from its established marketers, resulting in the presentation of over 2100 claims for compound drug prescriptions to TRICARE, in the billed-for amount of over $14 million, in these two months directly preceding the TRICARE cut-off date of May 2015.

ILWU HEALTH CARE BENEFIT PLAN

19.  The International Longshore and Warehouse Union ("ILWU") – Pacific Maritime Association Welfare Plan ("the ILWU Plan") was a health care benefit program, as defined by 18 U.S.C. § 24(b), for active and retired dockworkers, ship clerks, foremen and watchmen, as well as their qualified dependents and survivors.  The ILWU Plan provided health care benefits for hospital, medical, surgical care and prescription drugs.  The ILWU Plan was a self-funded indemnity plan which received contributions from employers, registered employees, and the ILWU to fund the plan, the proceeds of which were then used to pay health insurance benefits for plan beneficiaries. Union members were generally guaranteed the maximum benefit, typically 100% of the charge for covered services.

20.  All persons who enjoyed ILWU Plan eligibility and qualified for hospital, medical and surgical benefits also typically enjoyed eligibility for benefits under the ILWU Prescription Drug Program.

21.  The ILWU Plan used OptumRX, a third-party plan administrator, to process and pay prescription drug claims submitted by health care providers to fill prescriptions written for ILWU Plan

9

beneficiaries. The ILWU Plan ultimately funded the payment of claims submitted by providers to OptumRX that OptumRX determined were covered by the ILWU Plan, and at all relevant times OptumRX was acting as an agent of the ILWU Plan. To bill OptumRX for prescription drugs covered under the ILWU Plan for ILWU Plan beneficiaries, a health care provider, e.g., a pharmacy, would submit a claim to OptumRX electronically on a standard claim form (Form 1500), identifying, among other things, the patient's name and identification number, diagnosis, the type of drug dispensed to the ILWU Plan member, the date of service, the charge for the service, the prescribing physician, and the provider. OptumRX reimbursed pharmacy providers only for medically necessary prescription drugs. OptumRX sent reimbursement checks to pharmacy providers through the United States mail, and the ILWU Plan routinely paid OptumRX the full amount of these reimbursement checks sent to pharmacy providers, as well as paying OptumRX administrative fees for processing the pharmacy provider claims.

22. In order to become a pharmacy entitled to submit claims for reimbursement to OptumRX, a pharmacy was required to execute an agreement with OptumRX, whereby it would become an OptumRX Credentialed Pharmacy. Pursuant to this agreement, the pharmacy agreed to comply with all applicable state and federal laws relating to fraud and abuse. Based upon guidance provided by OptumRX in its handbook, this included the requirement of avoiding, among other things, illegal remuneration schemes, script mills, and altered and forged prescriptions.

23. Between early 2014 until the beginning of May 2015, it was well-known within the compounded drug industry, among pharmacists

10

and marketers alike, that TRICARE paid some of the highest rates of reimbursement for the fulfillment of prescriptions for compound creams, ointments, and related medications.  It was also well-known within the compounded drug industry that the ILWU Plan offered higher rates of reimbursement for compound creams than other comparable private health care providers, although generally not quite as generous as TRICARE, and the ILWU Plan continued doing so through the middle of 2016.

B.    THE FRAUDULENT SCHEME

24.    Beginning on or about a date unknown, but at least as early as on or about April 2014, and continuing to on or about August 2016, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants BELL, PIEHL, EDWARDS, and SAMHAT, together with others known and unknown to the Grand Jury, knowingly, willfully, and with the intent to defraud, executed and attempted to execute a scheme and artifice to obtain money from health care benefit programs, namely, TRICARE and the ILWU Plan, as well as other private health care benefit programs as defined under 18 U.S.C. § 24(b), by means of materially false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.    MANNER AND MEANS OF THE FRAUDULENT SCHEME

25.    The fraudulent scheme operated, in substance, in the following manner:

Setting Up a Compound-Cream Prescription Mill at the CTG Clinic

a.    Defendants EDWARDS and PIEHL, and others known and unknown to the Grand Jury, agreed to take, and took, the following

11

steps, among others, to establish a compound prescription mill in which ILWU-Plan beneficiaries, along with other privately insured beneficiaries, were recruited, along with NP 1, to generate and fill multiple prescriptions for medically unnecessary compound creams that were subsequently submitted to Professional Compounding for lucrative reimbursement and to fund payments to downstream marketers:

i.    In or about early 2014, defendant PIEHL offered NP 1 a part-time job as a nurse practitioner at a clinic at CTG. Defendant PIEHL represented to NP 1 that she was a business partner of defendant EDWARDS, and that NP 1 would be compensated between $500 and $1500 a day, as a flat rate, to do follow up visits from time to time for defendant EDWARDS's patients at CTG.  Defendant PIEHL also falsely assured NP 1 in this context that she was a licensed registered nurse and was therefore qualified to serve as a business partner of a doctor.

ii.    Shortly after NP 1 accepted the job, NP 1 was contacted by defendant PIEHL and was asked to travel to the CTG clinic to perform follow-up visits on defendant EDWARDS's patients approximately one Saturday per month.  In that role, NP 1 was encouraged, particularly by defendant PIEHL, to prescribe compound cream medications to address the pain issues reported by defendant EDWARDS's patients, which NP 1 did.

iii.    Defendant PIEHL would often bring the patients into the treatment room used by NP 1 with pre-printed prescription forms containing specific menu options for the prescribing of compound creams, so that NP 1 merely had to check individual boxes on the forms to ensure the recommended compound creams were prescribed.

12

iv. The CTG clinic solicited patient beneficiaries from the ILWU Plan by offering payments of $200 per patient if the patients sought treatment for their pain symptoms by requesting compound cream medications, based in part on the pretense that the patients were participating in an authorized study conducted by defendant EDWARDS of the effectiveness of these compound cream medications, for which the patients were entitled to be compensated.

v. In fact, the alleged pain study was a sham and the $200 payments served solely as a ruse to attract ILWU Plan beneficiaries and induce them to accept compound cream prescriptions, which were subsequently sent to Professional Compounding through PFD for processing by OptumRX at high rates of reimbursement. Professional Compounding subsequently paid a significant portion of the reimbursement proceeds it received from OptumRX to downstream marketers, such as PFD, which in turn forwarded these proceeds to defendants PIEHL and SAMHAT.

vi. Defendant EDWARDS also separately treated a number of patients at the CTG clinic, all of whom were also paid $200 per visit. Defendant EDWARDS wrote a number of compound cream prescriptions for these patients that were subsequently submitted to Professional Compounding for fulfillment, as a result of which defendant EDWARDS received substantial referral fees through defendant PIEHL.

vii. After the ILWU Plan beneficiaries completed their initial visits at the CTG clinic with either defendant EDWARDS or NP 1, they were provided with a check for $200 by defendant PIEHL, or by others acting under defendant PIEHL's direction, which was drawn on the bank account of defendant EDWARDS's Foundation, the

13

alleged non-profit research foundation controlled by defendant EDWARDS.

Setting Up a Second Compound-Cream Prescription Mill

b. Defendants EDWARDS, PIEHL and SAMHAT, and others known and unknown to the Grand Jury, agreed to take, and took, the following steps, among others, to establish a second compound-cream prescription mill in which TRICARE beneficiaries were recruited, along with NP 1 and Physician 1, to generate and fill multiple prescriptions for medically unnecessary compound creams that were subsequently submitted to Professional Compounding for lucrative reimbursement by TRICARE:

i. In or about August 2014, as interest in soliciting new ILWU Plan beneficiaries to receive compound prescriptions waned, defendant EDWARDS, in consultation with defendant PIEHL, decided to initiate a second sham pain study targeting TRICARE beneficiaries located in the San Diego area, which had a large population of elderly U.S. veterans, particularly Filipino veterans.

ii. To implement this purpose, defendant EDWARDS, assisted by defendants PIEHL and SAMHAT, secured office space from an existing chiropractic practice and set up the National City clinic in around August or September 2014. The National City clinic offered treatment for pain to TRICARE beneficiaries exclusively on the weekends, typically on Friday or Saturday, when defendants EDWARDS and SAMHAT would travel down from Los Angeles to oversee the operation of the clinic.

iii. The National City clinic solicited patient beneficiaries from TRICARE by offering payments of $200 per patient

14

if the patients sought treatment for their pain symptoms at the clinic and filled out paperwork for the purported study, based in part on the pretense that the patients were participating in a study conducted by defendant EDWARDS's alleged non-profit Foundation concerning the effectiveness of pain therapies that provided an alternative to standard oral medications (such as opioids), focusing in particular on compound creams.

iv.   In fact, the Foundation's alleged pain study was a sham, and while defendant EDWARDS hired and paid office staff through his Foundation to obtain paperwork relating to the patients' pain history, defendant EDWARDS never consistently collected or retained data concerning the effectiveness of the treatments or medications they received through the National City clinic.  In effect, the $200 payments served solely as a ruse to attract TRICARE plan beneficiaries and to induce many of them to accept compound cream prescriptions, which were subsequently submitted to Professional Compounding for fulfillment at extremely high rates of reimbursement.

v.    The most important written information obtained by defendant EDWARDS's office staff from their intake with the TRICARE patients participating in the purported study was their gathering of insurance information and military identification, as reflected by the fact that office staff was instructed as the first item of their "Photo Copy Checklist" to ensure that a copy of each patient's TRICARE card and military ID was maintained in the file for subsequent billing.

vi.   Aside from hiring marketers and staff at the National City clinic through the Foundation to solicit TRICARE plan

15

beneficiaries and obtain necessary identifying TRICARE insurance information, defendant EDWARDS, with the assistance of defendant PIEHL, hired NP 1 and Physician 1, as well as other physicians and physician's assistants, to work at the clinic on weekends, and defendants EDWARDS and PIEHL jointly paid compensation to NP 1 and Physician 1 for their work at the clinic on a per diem basis through various corporations that they separately controlled.

vii. In connection with NP 1's work at the National City clinic, NP 1 was encouraged by defendant EDWARDS, as well as by others working at the clinic, directly and indirectly to prescribe a nearly identical set of compound-cream medications to virtually all of the patients NP 1 treated from a pre-printed form that was provided to NP 1 by the clinic. Shortly after NP 1 completed treating patients, NP 1 occasionally overheard defendant EDWARDS informing patients that they would be getting paid.

viii. When defendant EDWARDS engaged Physician 1 to work at the National City clinic, defendant EDWARDS informed Physician 1 that, in collaboration with defendant SAMHAT, defendant EDWARDS set up the clinic to study the effectiveness of compound-cream medications for the treatment of pain. Defendants EDWARDS and SAMHAT provided Physician 1 with a small number of prescription templates from particular pharmacies that contained specific menu options for the prescribing of compound-cream medications, several of which they recommended as having been highly effective in the past.

ix. Relying in significant part on the recommendations of defendants EDWARDS and SAMHAT, who was acting in coordination with defendant EDWARDS, Physician 1 wrote several hundred prescriptions for compound creams for numerous TRICARE

16

beneficiaries between approximately October 2014 and January 2015, the vast majority of which were forwarded to Professional Compounding for fulfillment through PFD. The prescriptions from Physician 1 resulted in several million dollars in reimbursements from TRICARE to Professional Compounding and in payments by Professional Compounding to downstream marketers such as PFD, which in turn provided commission/kickback payments to defendant PIEHL, among others.

x. After NP 1 and Physician 1 completed writing compound cream prescriptions for individual patients at the National City clinic, the prescriptions and patient files were transmitted to the custody of defendant SAMHAT, who reviewed the prescriptions and in some instances told Physician 1 to check certain boxes on the prescription forms that Physician 1 had supposedly overlooked or omitted. The prescriptions were then routed by defendant SAMHAT, and by office staff working under the direction of defendants EDWARDS and SAMHAT, to PFD before finally being transmitted to Professional Compounding. In several instances, defendants SAMHAT and EDWARDS also caused the insurance cards and military identification cards of TRICARE beneficiaries, containing personal identifying information (such as social security numbers), to be faxed electronically to PFD, along with their compound cream prescriptions.

xi. On multiple occasions, the prescriptions that were written by NP 1 and Physician 1 for compound creams were modified after they were turned over to the custody of defendants SAMHAT and EDWARDS, such that the modified prescriptions reflected that between six and eleven refills of the compound cream prescriptions were authorized, when in fact NP 1 and Physician 1 only actually authorized refills of these prescriptions on an as-needed

17

basis. The vast majority of these fraudulently modified prescriptions for refills were submitted to ESI by Professional Compounding for payment by TRICARE.

xii. When the issue arose as to which party was going to bear responsibility for paying for the compound creams that were prescribed through the pain study conducted at the National City clinic, defendant SAMHAT falsely assured patients that the clinic would be providing patients with a free trial of these creams for at least a month, while defendant EDWARDS told TRICARE beneficiaries not to worry because they would not be required to make any out-of-pocket payments for these creams even if their insurance provider was billed for the creams. In fact, defendants EDWARDS and SAMHAT both knew that: (1) TRICARE would be paying extremely high rates of reimbursement for these compound cream claims, as much as $3,000-$10,000 per tube of cream; (2) TRICARE had not agreed to waive their beneficiaries' obligation to make a co-payment on these compound cream prescription claims; and (3) TRICARE had neither been informed of, nor agreed to, paying for compound creams prescribed in connection with defendant EDWARDS's purported pain study.

xiii. Defendant EDWARDS also separately treated a number of patients on his own at the National City clinic, all of whom were also paid $200 per visit, and he wrote a number of compound cream prescriptions for these patients that were subsequently submitted for fulfillment, as a result of which defendant EDWARDS received commission payments through the Foundation from defendant PIEHL and her related entities.

xiv. After the TRICARE beneficiaries completed their initial visits at the National City clinic with either defendant

18

EDWARDS, Physician 1 or NP 1, and other physicians and physician's assistants, the beneficiaries were provided with checks for $200 by defendant EDWARDS, or by others acting at defendant EDWARDS's direction, which were drawn on the bank account of the Foundation.

PFD Accepts Compound Prescriptions For TRICARE Beneficiaries

c. Beginning in or about September 2014, defendant PIEHL contacted the principals of PFD, including Bradford, in order to secure PFD's agreement to accept a large volume of compound cream prescriptions for TRICARE beneficiaries that were being generated by the National City clinic, and defendant PIEHL and Bradford subsequently took the following steps to ensure that these prescriptions would be provided to PFD and then forwarded to Professional Compounding for submission to TRICARE at lucrative reimbursements rates:

i. In early September 2014, defendant PIEHL reported to the principals of PFD, including Bradford, that she had located a great new program in San Diego, California involving clinics that focused on prescribing compound creams for TRICARE beneficiaries, and she wanted to refer these prescriptions to PFD for processing with the compounding pharmacies with which PFD was affiliated, including Professional Compounding.

ii. In internal discussions among the principals of PFD, there were concerns that PFD would not be able to accept this business, because TRICARE was a federally funded-health insurance program and receipt and/or payment of commissions or referral fees to marketers for the submission of such prescriptions to pharmacies would potentially violate the federal anti-kickback statute. In fact, the sales commission agreement between PFD and Algia, the

19

marketing arm of Professional Compounding, expressly provided that there shall be "[n]o Commission for Government-Paid Prescriptions." However, defendant BELL falsely assured the principals of PFD that payment of commissions to PFD by Algia would not run afoul of the federal anti-kickback statute because Algia was an independent marketing company, separate from Professional Compounding, such that PFD was not effectively receiving commission payments from a pharmacy.

iii. Notwithstanding these issues, the principals of PFD accepted the referral of a large number of compound prescriptions for TRICARE beneficiaries from the National City clinic between October 2014 and May 2015, which were subsequently submitted to Professional Compounding for fulfillment and reimbursement by TRICARE.

iv. As a result of PFD's decision, PFD received over $9 million in commission payments for the referral of compound prescriptions for TRICARE beneficiaries from Professional Compounding between October 2014 and May 2015, and defendant PIEHL received over $2.5 million in commission payments from PFD, a significant portion of which she transferred to defendants EDWARDS and SAMHAT through various entities that they jointly controlled.

v. After TRICARE significantly reduced its reimbursement rates for compound creams starting in the beginning of May 2015, PFD discontinued its submission to Professional Compounding of compound prescriptions for TRICARE beneficiaries. However, PFD continued to accept and submit compound prescriptions to Professional Compounding for ILWU Plan beneficiaries that originated from the CTG clinic through approximately April 2016, because OptumRX continued to

20

pay reimbursements on behalf of ILWU Plan beneficiaries for compound cream prescriptions at relatively high levels through April 2016.

Fraudulent Claims Submitted to TRICARE and the ILWU Plan

d.   Defendant BELL, and others known and unknown to the Grand Jury, used, and directed employees of Professional Compounding to accept compounded drug prescription forms that were distributed to marketers and doctors for the purpose of filling compounded drug prescriptions.  The forms identified multiple compounded drug formulations, purportedly to treat pain, stretch marks, migraines, and wounds, and to promote general wellness, that were included on the forms because they provided the maximum possible TRICARE and/or ILWU Plan reimbursements rather than because they addressed legitimate, individual patient needs and were medically necessary.

e.   Defendant BELL, aided and abetted by defendants PIEHL, EDWARDS, and SAMHAT, and others known and unknown to the Grand Jury, filled and caused to be filled compounded drug prescriptions and caused false and fraudulent claims for reimbursement to be submitted to TRICARE and to the ILWU Plan, and to other private health care programs, claims that were demonstrably spurious because, among other things:

i.   Substantially all of the prescriptions were faxed or electronically sent to Professional Compounding and PFD from marketers to whom Professional Compounding and PFD had agreed to pay commissions/kickbacks disguised as advertising or marketing fees, while these prescriptions were solicited from doctors and patients who were paid by marketers principally in order to enable these marketers to realize kickbacks or referral fees on each claim that

21

was reimbursed by TRICARE, the ILWU Plan, or other private health care benefit programs.

ii.    Substantially all of the prescriptions were identically or nearly identically described on the same or similar prescription form or pad that identified pre-formulated compounds, and these forms typically originated with Professional Compounding or with other pharmacies that were paying commission fees and soliciting prescriptions that were refined by the marketers to maximize reimbursement rates.

iii.    Few, if any, of the beneficiaries for whom the prescriptions were provided ever paid, nor did Professional Compounding attempt or ever intend to collect, any co-payment as required by TRICARE.

iv.    The relatively small number of purported prescribing physicians recurred on multiple prescriptions and on multiple refills of prescriptions, even though in several instances these physicians did not in fact actually prescribe multiple refills but indicated only that refills were authorized on an as-needed basis.

v.    Professional Compounding conducted little, if any, due diligence upon receipt of the prescriptions to verify whether, in fact, the beneficiaries actually sought the prescribed medications.  Indeed, in several instances Professional Compounding either deliberately refrained from calling beneficiaries to avoid giving notice to beneficiaries or, in other instances, ignored beneficiaries' complaints that the prescriptions were either ineffective or not needed at all, especially after the initial round of prescriptions had been sent out.

vi.     The compounded formulations were virtually identical for all of the beneficiaries regardless of their purported illnesses, and none of the prescriptions was specifically formulated based on the individualized needs, medical history, allergic reaction potential, contraindications, or conflicts with other prescription medications that were unique to each particular beneficiary.

vii.    In submitting reimbursement claims for the compound cream prescriptions filled at Professional Compounding, defendant BELL generally billed the health insurance providers based upon his claimed use of a relatively expensive base cream ingredient known as Versepro, when in fact defendant BELL routinely used a significantly less expensive base cream in preparing the compound cream mixtures, which if accurately reported to TRICARE or the ILWU Plan would have warranted a lower reimbursement amount.

Defendant BELL's Attempt to Conceal the TRICARE Kickbacks

f.   In or about August 20, 2016, in connection with responding to TRICARE's audit inquiries regarding the business records and activities of Professional Compounding, defendant BELL requested a meeting with Bradford to discuss concerns he had regarding the fact that Professional Compounding had been improperly paying millions of dollars in kickbacks to PFD based on adjudicated claims paid by TRICARE to Professional Compounding.

g.   In this meeting, defendant BELL conceded that he was not supposed to be paying referral or commission fees to PFD on TRICARE claims (as expressly prohibited in the existing contract between PFD and Algia), but he proposed that PFD execute a new, backdated contract with Algia, pursuant to which all monies that Algia historically paid to PFD would be accounted for as commission

23

payments for referrals of compound scripts reimbursed by private or PPO insurance plans, not by TRICARE.

h. Based on this new proposed fictitious contract between Algia and PFD, Algia would make commission payments to PFD, and other marketers, "equivalent to 97.5% of adjudicated amounts paid by non-government sponsored private insurance for compounded prescription drugs," as opposed to the 43% commission payment provided for in the actual existing contract between Algia and PFD. By falsely revising the contract in this way, and seeking to backdate it, defendant BELL indicated that he could explain to those reviewing his business accounts that the monies he paid to PFD related to referral fees owed based on reimbursement of private insurance claims, rather than based on referral fees for reimbursement of TRICARE claims.

i. In providing a copy of this fictitious contract to Bradford and one of his partners, defendant BELL assured the PFD participants that if they agreed to execute this new proposed fictitious contract, defendant BELL would be able to survive government scrutiny of his business practices at Professional Compounding and Algia and the PFD principals would never have to hear about this again.

j. As a result of the fraudulent scheme described above, TRICARE suffered financial losses of approximately $19.2 million and the ILWU Plan suffered losses of approximately $2.8 million.

D. EXECUTIONS OF THE FRAUDULENT SCHEME

26. On or about the dates set forth below, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, defendants BELL, PIEHL, EDWARDS, and SAMHAT, together with others known and unknown to the Grand Jury, aiding and abetting each

24

other, knowingly and willfully executed and attempted to execute the fraudulent scheme described above, by submitting and causing to be submitted to TRICARE and the ILWU Plan the following false and fraudulent claims:

| COUNT | DATE | CLAIM | DEFENDANTS |
|---|---|---|---|
| ONE | 2/9/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $16,673 for compounded drug prescription in the name of beneficiary F.G. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| TWO | 2/9/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $4,443 for compounded drug prescription in the name of beneficiary C.G. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| THREE | 3/9/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $16,673 for compounded drug prescription in the name of beneficiary F.G. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| FOUR | 3/9/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $4,443 for compounded drug prescription in the name of beneficiary C.G. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| FIVE | 3/31/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $4,443 for compounded drug prescription in the name of beneficiary D.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |

| COUNT | DATE | CLAIM | DEFENDANTS |
|---|---|---|---|
| SIX | 3/31/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $4,443 for compounded drug prescription in the name of beneficiary C.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| SEVEN | 3/31/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $16,673 for compounded drug prescription in the name of beneficiary C.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| EIGHT | 4/23/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $4,443 for compounded drug prescription in the name of beneficiary D.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| NINE | 4/23/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $4,443 for compounded drug prescription in the name of beneficiary C.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| TEN | 4/23/15 | Claim submitted by Professional Compounding to TRICARE in the approximate amount of $16,673 for compounded drug prescription in the name of beneficiary C.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| ELEVEN | 7/9/15 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $1000 for compounded drug prescription in the name of beneficiary P.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |

| COUNT | DATE | CLAIM | DEFENDANTS |
|---|---|---|---|
| TWELVE | 7/9/15 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $1000 for compounded drug prescription in the name of beneficiary B.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| THIRTEEN | 7/21/15 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $1000 for compounded drug prescription in the name of beneficiary P.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| FOURTEEN | 12/7/15 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $11,958 for compounded drug prescription in the name of beneficiary S.S | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| FIFTEEN | 1/4/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $11,958 for compounded drug prescription in the name of beneficiary B.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| SIXTEEN | 1/29/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $12,078 for compounded drug prescription in the name of beneficiary B.S. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| SEVENTEEN | 2/2/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $12,078 for compounded drug prescription in the name of beneficiary A.C. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |

| COUNT | DATE | CLAIM | DEFENDANTS |
|-------|------|-------|------------|
| EIGHTEEN | 2/2/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $12,078 for compounded drug prescription in the name of beneficiary V.C. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| NINETEEN | 2/16/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $12,078 for compounded drug prescription in the name of beneficiary A.C. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| TWENTY | 2/16/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $12,078 for compounded drug prescription in the name of beneficiary V.C. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| TWENTY-ONE | 4/8/16 | Claim submitted by Professional Compounding to ILWU Plan in the approximate amount of $12,080 for compounded drug prescription in the name of beneficiary A.C. | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |

COUNTS TWENTY-TWO THROUGH TWENTY-SEVEN

[18 U.S.C. §§ 1341, 2(b)]

[DEFENDANTS BELL, PIEHL, EDWARDS, AND SAMHAT]

27.  The Grand Jury realleges and incorporates paragraphs 1 through 23 of this First Superseding Indictment here.

A.    THE MAIL FRAUD SCHEME

28.    Beginning on or about a date unknown to the Grand Jury, but at least as early as in or about April 2014, and continuing through at least on or about August 2016, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants BELL, PIEHL, EDWARDS, and SAMHAT, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, executed and attempted to execute a scheme and artifice to obtain money and property from TRICARE and the ILWU Plan, and from other health care benefit programs, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.    MANNER AND MEANS OF THE MAIL FRAUD SCHEME

29.    The mail fraud scheme operated, in substance, by the means and in the manner alleged in paragraph 25 of this First Superseding Indictment, which is incorporated here.

C.    USE OF THE MAILS

30.    On or about the dates set forth below, in Los Angeles and Orange Counties, within the Central District of California and elsewhere, the defendants identified below, for the purpose of executing and attempting to execute the above-described scheme to defraud, willfully caused the items below to be placed in an

29

authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon:

| COUNT | DATE | ITEM MAILED | DEFENDANTS |
|---|---|---|---|
| TWENTY-TWO | 2/5/15 | TRICARE payment, check no. 8327230, in the approximate amount of $298,641 and payable to Professional Compounding Pharmacy was mailed from ESI offices located in Maryland Heights, MO to Professional Compounding Pharmacy, located La Habra, CA | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| TWENTY-THREE | 3/5/15 | TRICARE payment, check no. 8333105, in the approximate amount of $418,910 and payable to Professional Compounding Pharmacy was mailed from ESI offices located in Maryland Heights, MO to Professional Compounding Pharmacy, located in La Habra, CA | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| TWENTY-FOUR | 4/30/15 | TRICARE payment, check no. 8344629, in the approximate amount of $1,361,464 and payable to Professional Compounding Pharmacy was mailed from ESI offices located in Maryland Heights, MO to Professional Compounding Pharmacy, located La Habra, CA | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |

| COUNT | DATE | ITEM MAILED | DEFENDANTS |
|---|---|---|---|
| TWENTY-FIVE | 5/14/15 | TRICARE payment, check no. 8347615, in the approximate amount of $2,999,915 and payable to Professional Compounding Pharmacy was mailed from ESI offices located in Maryland Heights, MO to Professional Compounding Pharmacy, located La Habra, CA | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS SARA SAMHAT |
| TWENTY-SIX | 10/25/15 | ILWU Plan payment, check no. 564983, in the approximate amount of $74,076 and payable to Professional Compounding Pharmacy was mailed from OptumRX offices located in Schaumberg, IL to Professional Compounding Pharmacy located in Brea, CA | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |
| TWENTY-SEVEN | 3/17/16 | ILWU Plan payment, check no. 8497885, in the approximate amount of $106,382 and payable to Professional Compounding Pharmacy was mailed from OptumRX offices located in Cypress, CA to Professional Compounding Pharmacy located in Brea, CA | JAMES NATE BELL REGINA PIEHL MICHAEL EDWARDS |

COUNTS TWENTY-EIGHT THROUGH FORTY

[42 U.S.C. § 1320a-7b(b)(2)(A); 18 U.S.C. § 2(b)]

[DEFENDANTS BELL, PIEHL, AND BRADFORD]

31.    The Grand Jury realleges and incorporates by reference paragraphs 1 through 23 of this First Superseding Indictment here.

32.    On or about the dates set forth below, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, the defendants identified below knowingly and willfully offered to pay, paid, and caused to be offered and paid remuneration to marketers, namely, the following payments, which constituted kickbacks in exchange for providing prescriptions to Professional Compounding or Mesa for which payment could be made in whole and in part under a federal health care program, namely, TRICARE, as follows:

| COUNT | DATE | DEFENDANT | ITEM | APPROXIMATE AMOUNT |
|---|---|---|---|---|
| TWENTY-EIGHT | 2/12/15 | BELL | Check no. 1017 to entity PFD, with the memo line "Feb 5th-11th, 2015," from JP Morgan Chase account ending in 0852 in the name of Algia, Inc. ("JPMC 0852") and signed by defendant BELL | $140,316 |
| TWENTY-NINE | 2/20/15 | PIEHL | Check no. 1037 to entity MMRT from Open Bank account ending in 1860 in the name of WMG ("OB 1860") and signed by defendant PIEHL | $19,400 |
| THIRTY | 2/20/15 | PIEHL | Check no. 376 to entity MMRA from Union Bank account ending in 0486 in the name of GMN ("UB 0486") and signed by defendant PIEHL | $20,000 |

32

| COUNT | DATE | DEFENDANT | ITEM | APPROXIMATE AMOUNT |
|---|---|---|---|---|
| THIRTY-ONE | 3/12/15 | BELL | Wire transfer, reference no. ending in 071E, to entity PFD with memo "Aug 29th -Sep11th," from JPMC 0852 caused by defendant BELL | $406,014 |
| THIRTY-TWO | 3/23/15 | PIEHL | Check no. 392 to entity MMRT from Bank of America account ending in 0486 in the name of GMN ("BofA 0486") signed by defendant PIEHL | $19,070 |
| THIRTY-THREE | 3/26/15 | PIEHL | Check no. 677 to entity the Foundation from Union Bank account ending in 4558 signed by defendant PIEHL | $4000 |
| THIRTY-FOUR | 3/27/15 | BELL | Wire transfer, reference no. ending in 086E, to entity PFD from JPMC 0852 caused by defendant BELL | $687,616 |
| THIRTY-FIVE | 4/17/15 | BELL | Wire transfer, reference no. ending in 107E, to entity PFD from JPMC 0852 caused by defendant BELL | $760,501 |
| THIRTY-SIX | 4/17/15 | BRADFORD | Check no. 6403 to entity CTG from Bank of America account ending in 9702 in the name of PFD ("BofA 9702") signed by R.V. | $35,684 |
| THIRTY-SEVEN | 4/23/15 | PIEHL | Check No. 442 to entity MMRT from BofA 0486 and signed by defendant PIEHL | $26,200 |
| THIRTY-EIGHT | 4/24/15 | BELL | Wire transfer, reference number ending in 114E, to entity PFD from JPMC 0852 caused by defendant BELL | $795,414 |

33

| COUNT | DATE | DEFENDANT | ITEM | APPROXIMATE AMOUNT |
|---|---|---|---|---|
| THIRTY-NINE | 5/29/15 | BRADFORD | Check No. 6266 to entity Marvel Marketing Group LLC with memo "Comm" from Bank of America account ending in 2269 ("BofA 2269") signed by defendant BRADFORD | $23,970.32 |
| FORTY | 5/29/15 | BRADFORD | Check No. 6269 to James Bradford with memo "Comm." from BofA 2269 signed by defendant BRADFORD | $6,500 |

34

COUNTS FORTY-ONE THROUGH FORTY-NINE

[42 U.S.C. § 1320a-7b(b)(1)(A); 18 U.S.C. § 2(b)]

[DEFENDANTS PIEHL, EDWARDS, SAMHAT AND BRADFORD]

33.   The Grand Jury realleges and incorporates paragraphs 1 through 23 of this First Superseding Indictment here.

34.   On or about the dates set forth below, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, the defendants identified below knowingly and willfully solicited and received remuneration, namely, the following payments, which constituted kickbacks in exchange for providing prescriptions to Professional Compounding or Mesa for which payment could be made in whole and in part under a federal health care program, namely, TRICARE, as follows:

| COUNT | DATE | DEFENDANT | ITEM | APPROXIMATE AMOUNT |
|---|---|---|---|---|
| FORTY-ONE | 3/4/15 | PIEHL | Check No. 6164 to entity WMG from BofA 9702 and signed by D.L. | $33,884 |
| FORTY-TWO | 3/8/15 | EDWARDS | Check no. 1047 to entity MMRA from OB 1860 signed by defendant PIEHL | $16,800 |
| FORTY-THREE | 3/9/15 | EDWARDS | Check no. 1050 to entity the Foundation from OB 1860 and signed by defendant PIEHL | $6,000 |
| FORTY-FOUR | 3/23/15 | SAMHAT | Check no. 1052 to entity MMRT from OB 1860 and signed by defendant PIEHL | $17,000 |
| FORTY-FIVE | 4/5/15 | SAMHAT | Check no. 0488 to entity MMRT from BofA 0486 signed by defendant PIEHL | $5,100 |

35

| COUNT | DATE | DEFENDANT | ITEM | APPROXIMATE AMOUNT |
|-------|------|-----------|------|--------------------|
| FORTY-SIX | 4/19/15 | SAMHAT | Check no. 441 to entity MMRT from BofA 0486 signed by defendant PIEHL | $16,400 |
| FORTY-SEVEN | 4/24/15 | BRADFORD | Wire transfer, reference number ending in 114E, to entity PFD from JPMC 0852 caused by Bell | $795,414 |
| FORTY-EIGHT | 5/14/15 | PIEHL | Check no. 6556 to entity CTG from BofA account ending in 9702 signed by R.V. | $22,000 |
| FORTY-NINE | 5/27/15 | BRADFORD | Wire transfer, reference number ending in 9741, to entity InGen Solutions, Inc. from Wells Fargo Bank account ending in 0557 caused by NHS Pharma Sales, Inc. | $108,936.57 |

36

COUNTS FIFTY THROUGH FIFTY-THREE

[18 U.S.C. §§ 1957, 2]

[DEFENDANT BELL]

35.   The Grand Jury realleges and incorporates paragraphs 1 through 23 of this First Superseding Indictment here.

36.   On or about the following dates, in Orange County, within the Central District of California, and elsewhere, defendant BELL, knowing that the funds involved represented the proceeds of some form of unlawful activity, knowingly engaged in, aided and abetted, and willfully caused the following monetary transactions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having, in fact, been derived from a specified unlawful activity, namely, mail fraud as alleged above, in violation of Title 18, United States Code, Section 1341:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| FIFTY | 2/23/15 | Transfer of approximately $92,855 from JP Morgan Chase Bank account ending in number 4060 in the names of defendant BELL and CV ("JPMC 4060") to Renick Cadillac by means of check no. 1214, payable to Renick Cadillac, dated 2/22/15 |
| FIFTY-ONE | 5/21/15 | Transfer of approximately $500,000 from JPMC 0852 to Morgan Stanley account in the name of James N. Bell ending in account no. 1405 through a wire transfer, reference no. ending in 141E |
| FIFTY-TWO | 6/24/15 | Transfer of approximately $2,600,000 from JPMC 0852 to Morgan Stanley account in the name of James N. Bell ending in account no. 1405, through a wire transfer, reference no. ending in 175E |
| FIFTY-THREE | 9/16/15 | Transfer of approximately $3,927,014 from JPMC 4060 to Alliance Mutual Escrow, Inc., through a wire transfer, reference no. ending in 258E |

37

COUNT FIFTY-FOUR

[18 U.S.C. § 1518(a)]

[DEFENDANT BELL]

37.  The Grand Jury realleges and incorporates paragraphs 1 through 23 and subparagraphs 25(f)-(i) of this First Superseding Indictment here.

38.  On or about August 20, 2016, in Orange County, within the Central District of California, and elsewhere, defendant BELL willfully attempted to prevent, obstruct, mislead, and delay the communication to a criminal investigator of information and records relating to commission payments made by Algia to PFD, which were violations of a Federal health care offense, namely, illegal remuneration for federal health care referrals, in violation of Title 42, United States Code, Section 1320a-7b(b).  Specifically, after receiving an administrative subpoena seeking contracts between Professional Compounding and marketers between January 2014 and August 2016, defendant BELL drafted and attempted to persuade the principals of PFD to execute a fictitious contract reflecting a purported agreement in 2014 between Algia and PFD, pursuant to which Algia would pay a 97.5% commission rate to PFD for referral to Professional Compounding of compound prescriptions funded by private insurance, so that it would appear that all monies that Algia historically paid to PFD could be accounted for as commission payments for referrals of compound prescriptions reimbursed by private or PPO insurance plans, not by TRICARE.

38

COUNT FIFTY-FIVE

[18 U.S.C. § 1503]

[DEFENDANT PIEHL]

39.  The Grand Jury realleges and incorporates paragraphs 1 through 23 of this First Superseding Indictment here.

40.  From on or about July 11, 2019 to on or about July 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant PIEHL corruptly endeavored to influence, obstruct, and impede the due administration of justice. Specifically, after receiving a federal grand jury subpoena on or about July 11, 2019 seeking records concerning payments from defendant PIEHL's entities, defendant PIEHL: endeavored to create evidence that would falsely show that defendant PIEHL and Edwards had a written contract, pursuant to which monies that defendant PIEHL's entities had paid to Edwards's entities as illegal kickbacks would be misleadingly recast as equity investments in, or loans to Edwards's entities, requiring scheduled payments by Edwards's entities to defendant PIEHL's entities as returns on investment or repayments of loans.  To further her obstruction, defendant PIEHL proposed to Edwards that: (1) Edwards write a fake contract falsely indicating that defendant PIEHL had either loaned money to or invested money in MMRA or MMRT; and (2) Edwards start paying defendant PIEHL money immediately so they could characterize these transfers as payments for defendant PIEHL's loans to or investment in MMRA or MMRT.

39

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of any of the offenses set forth in any of Counts One through Twenty-One or Twenty-Eight through Forty-Nine of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the

40

preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                    FORFEITURE ALLEGATION TWO

          [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

     1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty-Two through Twenty-Seven of this First Superseding Indictment.

     2.    Any defendant so convicted shall forfeit to the United States of America the following:

          (a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses; and

          (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

     3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                              42

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Fifty through Fifty-Three of this First Superseding Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

43

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

_____ /S/ _____
Foreperson

NICOLA T. HANNA
United States Attorney

Brandon Fox

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and Community
Safety Crimes Section

MONICA E. TAIT
Assistant United States Attorney
Deputy Chief, Major Frauds Section

PAUL G. STERN
Assistant United States Attorney
Senior Trial Attorney
Environmental and Community Safety
Crimes Section

DAVID H. CHAO
Assistant United States Attorney
Major Frauds Section

44

**UNDER SEAL**

**United States District Court**
**Central District of California**

| | |
|---|---|
| **UNITED STATES OF AMERICA vs.** | **Docket No.** SACR 20-00018-JVS |
| **Defendant** James Nate Bell | **Social Security No.** 2 5 6 8 |
| akas: Bell, James Nathan | (Last 4 digits) |

**JUDGMENT AND PROBATION/COMMITMENT ORDER**

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| 08 | 14 | 2023 |

**COUNSEL** — **Diane Bass, Retained**
(Name of Counsel)

**PLEA** — [X] **GUILTY,** and the court being satisfied that there is a factual basis for the plea. [ ] **NOLO CONTENDERE** [ ] **NOT GUILTY**

**FINDING** — There being a finding/verdict of **GUILTY,** defendant has been convicted as charged of the offense(s) of: Obstruction of Criminal Investigation of Health Care Offense in violation of 18 U.S.C. §§ 1518(a) as charged in Count 54 of the First Superseding Indictment.

**JUDGMENT AND PROB/ COMM ORDER** — The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of: **THREE (3) YEARS PROBATION.**

It is ordered that the defendant shall pay to the United States a special assessment of $100, which is due immediately. Any unpaid balance shall be due during the period of probation, at the rate of not less than $25 per quarter.

It is ordered that the defendant pay restitution in the total amount of $500,000 pursuant to 18 U.S.C. § 3663(a)(3). Defendant shall pay restitution in full immediately. The Court finds from a consideration of the record that the defendant's economic circumstances allow for a full and immediate payment of restitution.

The defendant shall comply with Second Amended General Order No. 20-04.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, James Nate Bell, is hereby placed on probation on Count 54 of the 55-count First Superseding Indictment (FSI) for a term of 3 years under the following terms and conditions:

1. The defendant shall comply with the rules and regulations of the United States Probation & Pretrial Services Office and Second Amended General Order 20-04, including the conditions of probation and supervised release set forth in Section III of Second Amended General Order 20-04.

| USA vs. | James Nate Bell | | Docket No.: | SACR 20-00018-JVS |
|---|---|---|---|---|

2. During the period of probation, the defendant shall pay the special assessment in accordance with this judgment's orders pertaining to such payment.

3. The defendant shall cooperate in the collection of a DNA sample from the defendant.

4. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days from today and at least two periodic drug tests thereafter, not to exceed eight tests per month, as directed by the Probation Officer.

5. The defendant shall not engage, as whole or partial owner, employee or otherwise, in any business involving federally funded health insurance, benefits, or entitlement programs without the express written approval of the Probation Officer prior to engaging in such employment. Further, the defendant shall provide the Probation Officer with access to any and all business records, client lists, and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer.

6. The defendant shall not be self-employed nor be employed in a position that does not provide regular pay stubs with the appropriate deductions for taxes, unless approved by the Probation Officer.

7. The defendant shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments and any other financial gains to the Court-ordered financial obligation.

8. As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns and a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income, expenses, and liabilities of the defendant.

9. The defendant shall submit the defendant's person, property, house, residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, email accounts, social media accounts, cloud storage accounts, or other areas under the defendant's control, to a search conducted by a United States Probation Officer or law enforcement officer. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner upon reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

Defendant is advised of his appeal rights.

On the Government's motion, the underlying indictment and remaining counts are ordered DISMISSED.

Bond is ordered exonerated.

USA vs.　James Nate Bell　　　　　　　　　　Docket No.:　SACR 20-00018-JVS

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed.  The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

August 15, 2023

Date

U. S. District Judge James V. Selna

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Clerk, U.S. District Court

August 15, 2023

Filed Date

By　E.Vargas

Deputy Clerk

The defendant must comply with the standard conditions that have been adopted by this court (set forth below).

### STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

| USA vs. | James Nate Bell | Docket No.: | SACR 20-00018-JVS |
|---------|----------------|-------------|-------------------|

1. The defendant must not commit another federal, state, or local crime;
2. The defendant must report to the probation office in the federal judicial district of residence within 72 hours of imposition of a sentence of probation or release from imprisonment, unless otherwise directed by the probation officer;
3. The defendant must report to the probation office as instructed by the court or probation officer;
4. The defendant must not knowingly leave the judicial district without first receiving the permission of the court or probation officer;
5. The defendant must answer truthfully the inquiries of the probation officer, unless legitimately asserting his or her Fifth Amendment right against self-incrimination as to new criminal conduct;
6. The defendant must reside at a location approved by the probation officer and must notify the probation officer at least 10 days before any anticipated change or within 72 hours of an unanticipated change in residence or persons living in defendant's residence;
7. The defendant must permit the probation officer to contact him or her at any time at home or elsewhere and must permit confiscation of any contraband prohibited by law or the terms of supervision and observed in plain view by the probation officer;
8. The defendant must work at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons and must notify the probation officer at least ten days before any change in employment or within 72 hours of an unanticipated change;

9. The defendant must not knowingly associate with any persons engaged in criminal activity and must not knowingly associate with any person convicted of a felony unless granted permission to do so by the probation officer. This condition will not apply to intimate family members, unless the court has completed an individualized review and has determined that the restriction is necessary for protection of the community or rehabilitation;
10. The defendant must refrain from excessive use of alcohol and must not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
11. The defendant must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12. For felony cases, the defendant must not possess a firearm, ammunition, destructive device, or any other dangerous weapon;
13. The defendant must not act or enter into any agreement with a law enforcement agency to act as an informant or source without the permission of the court;
14. The defendant must follow the instructions of the probation officer to implement the orders of the court, afford adequate deterrence from criminal conduct, protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

USA vs.   James Nate Bell                                              Docket No.:   SACR 20-00018-JVS

☐   The defendant must also comply with the following special conditions (set forth below).

### STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant must pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment under 18 U.S.C. § 3612(f)(1). Payments may be subject to penalties for default and delinquency under 18 U.S.C. § 3612(g). Interest and penalties pertaining to restitution, however, are not applicable for offenses completed before April 24, 1996. Assessments, restitution, fines, penalties, and costs must be paid by certified check or money order made payable to "Clerk, U.S. District Court." Each certified check or money order must include the case name and number. Payments must be delivered to:

United States District Court, Central District of California
Attn: Fiscal Department
255 East Temple Street, Room 1178
Los Angeles, CA 90012

or such other address as the Court may in future direct.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant must pay the balance as directed by the United States Attorney's Office. 18 U.S.C. § 3613.

The defendant must notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence address until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. § 3612(b)(l)(F).

The defendant must notify the Court (through the Probation Office) and the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. § 3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution under 18 U.S.C. § 3664(k). See also 18 U.S.C. § 3572(d)(3) and for probation 18 U.S.C. § 3563(a)(7).

Payments will be applied in the following order:

1. Special assessments under 18 U.S.C. § 3013;
2. Restitution, in this sequence (under 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid):
   Non-federal victims (individual and corporate),
   Providers of compensation to non-federal victims,
   The United States as victim;
3. Fine;
4. Community restitution, under 18 U.S.C. § 3663(c); and
5. Other penalties and costs.

### CONDITIONS OF PROBATION AND SUPERVISED RELEASE PERTAINING TO FINANCIAL SANCTIONS

As directed by the Probation Officer, the defendant must provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant. In addition, the defendant must not apply for any loan or open any line of credit without prior approval of the Probation Officer.

When supervision begins, and at any time thereafter upon request of the Probation Officer, the defendant must produce to the Probation and Pretrial Services Office records of all bank or investments accounts to which the defendant has access, including any business or trust accounts. Thereafter, for the term of supervision, the defendant must notify and receive approval of the Probation Office in advance of opening a new account or modifying or closing an existing one, including adding or deleting signatories; changing the account number or name, address, or other identifying information affiliated with the account; or any other modification. If the Probation Office approves the new account, modification or closing, the defendant must give the Probation Officer all related account records within 10 days of opening, modifying or closing the account. The defendant must not direct or ask anyone else to open or maintain any account on the defendant's behalf.

The defendant must not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

---

CR-104 (docx 12/20)                 **JUDGMENT & PROBATION/COMMITMENT ORDER**                 Page **5** of **6**

USA vs.    James Nate Bell        Docket No.:    SACR 20-00018-JVS

---

**RETURN**

I have executed the within Judgment and Commitment as follows:

Defendant delivered on          to

Defendant noted on appeal on

Defendant released on

Mandate issued on

Defendant's appeal determined on

Defendant delivered on          to

at

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

By _____

| Date | Deputy Marshal |

**CERTIFICATE**

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____

| Filed Date | Deputy Clerk |

---

**FOR U.S. PROBATION OFFICE USE ONLY**

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____
Defendant          Date

_____
U. S. Probation Officer/Designated Witness      Date

---